(C. D. 147)

SELSI Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 14, 1939)

*Lane & Wallace* (*William Fox* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Webster J. Oliver,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of aneroid barometers in the dials of some of which there is incorporated as an integral part of the article a thermometer. All of said barometers were assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for; and it is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

The particular barometers which have no thermometers attached thereto are represented by items marked "A" and checked by "L. C. B." on the invoices accompanying the entries covered by this suit; and counsel for the respective parties have entered into a stipulation in writing (Exhibit 1 herein) in which it is agreed that those barometers represented by invoice items so marked and checked are similar in all material respects to the aneroid barometers which formed the subject of *United States* v. *L. Oppleman, Inc.,* 25 C. C. P. A. 168, T. D. 49271, and which were therein held to be properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines not specially provided for; and that the record in that case may be incorporated in and made part of the record in this case.

Therefore, there merely remains to be determined the question of the tariff status of the particular barometers which have thermometers incorporated therein. A sample of such a barometer is in evidence herein as Exhibit 2.

In addition to the exhibits, the plaintiff corporation has submitted the oral testimony of its foreign department manager, one Germain Epstein. The Government called no witnesses.

The said Epstein testified that during the past thirty-one years he has been thoroughly familiar with aneroid barometers and their method of operation; that except for certain immaterial differences in size and shape all of the barometers represented by invoice items

1312/1, 1312, and 1302 are identical with Exhibit 2; that although each has a thermometer incorporated in the lower part of the barometer dial, the method of operating the barometer is practically the same as the method which operated the aneroid barometers which formed the subject of the above-cited decision in *United States* v. *L. Oppleman, Inc.*; that the attached mercury thermometer is not a complete thermometer in that it cannot be removed in its entirety from said dial, for the reason that the thermometer graduations are marked on the barometer dial and not upon the tube of the thermometer; that the presence and operation of the thermometer in no way affects the functioning of the barometer as such; that for the past thirty years he has sold articles like Exhibit 2 either as barometers or as aneroid barometers; and that such articles are always sold as a complete unit and never as separate entities.

On cross-examination he testified that Exhibit 2 is an ordinary aneroid barometer; that barometers are sold with or without thermometers attached; and that, when customers order aneroid barometers they specify trade catalog numbers which designate the particular barometers desired.

As to the law in the premises, the fact here established that the present barometers have internal mechanisms similar to those in the barometers which were before the appellate court in the above-cited case would appear to determine the question of tariff classification here presented. Of the articles in the cited case the appellate court said:

> The aneroid barometers here involved operate in accordance with mechanical principles. That they are mechanical contrivances, having operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms, without which parts and their coordinate movements the articles would not function, cannot be seriously questioned. They are somewhat like weighing or computing scales which are clearly machines, and were held to be dutiable as such under paragraph 372 of the Tariff Act of 1922 by the Board of General Appraisers (now United States Customs Court) in the case of *C. J. Tower & Sons* v. *United States*, T. D. 40876, 47 Treas. Dec. 569, which decision was called to the attention of the Congress during its consideration of paragraph 372 of H. R. 2667, which later became paragraph 372 of the Tariff Act of 1930. See Summary of Tariff Information, 1930, Vol. 1, p. 841.

>     \*      \*      \*      \*      \*      \*      \*      \*

> We think it is clear from what has been said that the involved articles are mechanical contrivances which utilize and apply energy or force, and are, therefore, machines. \* \* \*

That conclusion is equally applicable to all of the barometers here involved, including those with attached thermometers. The presence or absence of the thermometers does not alter in the remotest degree or in any way affect the operation of the internal mechanism of the barometers. As a matter of fact, the thermometers are merely a part of the barometer dials. They are no more a working part of such

internal mechanism than would a clock attached to a steam engine be a working part of the mechanism of such engine. The function of the one is absolutely separate and independent of the other. At best, such barometers are machines in the dials of which are incorporated thermometers as an added incidental feature. And the fact that the thermometer is inseparably attached to the barometer dial requires that the whole article be classified as an entirety.

It is a well-known fact that there are on the market certain watches used by boy scouts, guides, and others, which are manufactured with small compasses in the crowns attached to their winding stems. The inclusion of a compass as part of the watch crown certainly does not cause the watch to lose its identity as a watch. The compass has nothing whatever to do with the operation of the watch, since it is used for an entirely different purpose than time-keeping. It is merely an added incidental feature of that particular kind of a watch.

Again, certain thermostats, used to regulate heating units to control the temperature of a room, or other place, are manufactured with a small glass thermometer attached to the outside of their cases. The inclusion of such a thermometer as part of the case of the thermostat does not cause the thermostat to lose its identity as such. There, as here, the thermometer performs an entirely separate and distinct function from that performed by the thermostat mechanism proper.

On the established facts and the law applicable thereto we follow the cited decision in *United States* v. *L. Oppleman, Inc., supra,* and hold all of the barometers covered by this suit upon which duty was levied at the rate of 45 per centum ad valorem under said paragraph 397 as manufactures of metal not specially provided for, to be properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.